**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Howard Eugene MILLER,
Defendant-Appellant.**

**No. 81–1566.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 7, 1982.

Decided Sept. 21, 1982.

Rehearing and Rehearing En Banc
Denied Dec. 3, 1982.

654

Donald Snavely, Missoula, Mont., for defendant-appellant.

George F. Darragh, Asst. U. S. Atty., Butte, Mont., for plaintiff-appellee.

Before CHOY, TANG, and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge.

The principal issue in this appeal is whether a theft victim's visit to the defendant's property to look for his stolen trailer constituted a government search and is subject to Fourth Amendment requirements.

Because the theft victim acted on his own and received consent to walk around the premises from the defendant's son, his visit was not an unlawful government search and the fruits thereof were properly admitted into evidence. Accordingly, we affirm the defendant's conviction.

### Facts

Miller was indicted for and convicted of receiving stolen goods in violation of 18 U.S.C. § 2315. The events leading up to his indictment were as follows.

In November, 1980, Nandor Szombathy reported the theft of his low-boy trailer and three conveyor belts to the Spokane Police Department. In mid-February, 1981, he received an anonymous tip that his trailer was on Miller's property in Superior, Montana. He relayed this tip to the Spokane police, who advised him to notify the FBI, which he did.

After receiving this tip, FBI Agent John Nelson notified the local sheriff's office in Superior, Montana. A deputy sheriff then informed Agent Nelson that Miller had a low-boy with a "for sale" sign on it parked next to the frontage road running to Miller's property. Both Agent Nelson and Sheriff Ron Boyce visited Miller's property and examined the trailer parked along the frontage road but they were unable to confirm whether it was the stolen trailer. They then invited Szombathy to come to Superior to examine the trailer parked alongside the frontage road.

Szombathy drove to Superior on February 21, 1981. En route he drove past Miller's property and noticed two trailers parked between the frontage road that leads to Miller's property and the highway. The trailers were parked approximately 100 to 150 yards from the highway, and were marked "for sale." When first driving by, Szombathy thought that one of the two trailers might have been his, but was not sure. He then continued to Superior to meet with Agent Nelson and Sheriff Boyce.

At this meeting, Szombathy asked whether he could go to Miller's property to look for his trailer. He suggested that he pose as a prospective buyer of mining equipment to gain access to the property. Agent Nelson answered that he "didn't see anything wrong with that at all." The officers and Szombathy agreed to rendezvous later that morning.

Upon arriving at Miller's property, Szombathy went to look at the trailers parked alongside the frontage road. While he was looking at the trailers, Miller's high school-age son drove up and asked Szombathy what he wanted. Szombathy replied that he was looking for a low-boy trailer to haul mining equipment with. Miller's son explained that there were other trailers in Miller's shop area, and took Szombathy there. The shop area was approximately 300 to 450 yards from where the two trailers were parked.

Szombathy saw a trailer in Miller's shop area that he recognized as his. The trailer was upside down, its axles had been removed, and its tailend had been cut off. In addition, the trailer had been painted since it was stolen. Despite these alterations, Szombathy recognized it as his because of its unusually large size and sturdy construction. Szombathy acknowledged that the trailer was not visible from the frontage road.

Upon seeing his trailer, Szombathy explained that he was looking for a smaller trailer. When Miller's son took him into the woods near Miller's residence, which was apart from the shop area, to look at another trailer, Szombathy saw the conveyors that had been lying on top of his trailer when it was stolen. The conveyor belts were not visible from the frontage road either.

After this visit to Miller's property, Szombathy returned to Superior and reported his observations to the two officers at their scheduled meeting. At this point, on the basis of Szombathy's observations, Agent Nelson suggested that they obtain a

search warrant. Szombathy decided that, in the meantime, he would go back to Miller's property and photograph the stolen equipment. Agent Nelson objected to this idea, thinking that this might "tip off" Miller. Nonetheless Szombathy returned to Miller's property to take some pictures. Agent Nelson followed him for protective purposes, positioning himself where he could watch Szombathy with binoculars.

Upon his return to Miller's property, Szombathy encountered Miller's son, who was leaving, and told him that he was "going back to look at the conveyor and look at the other stuff again." Szombathy took several pictures, which were admitted into evidence at Miller's trial.

Based on Szombathy's observations during his visits to Miller's property, Agent Nelson obtained a search warrant and searched Miller's property on February 24, 1981, at which time he did not locate the stolen trailer or conveyor belts.

Miller was indicted on March 24, 1981, for receiving and concealing a low-boy trailer, knowing it to have been stolen. Thereafter, Sheriff Boyce recovered the stolen trailer and conveyor belts from places other than Miller's residence.

Prior to trial, Miller moved to suppress the evidence obtained during Szombathy's visits to his property. He also filed a motion in limine to preclude the introduction of evidence regarding the three conveyor belts. Both motions were denied. At trial the jury returned a guilty verdict.[1]

Miller subsequently moved for a judgment of acquittal or, in the alternative, for a new trial. He sought acquittal because of an alleged insufficiency of evidence. He sought a new trial because of a number of alleged errors at trial. Both motions were denied, and Miller was sentenced. He now appeals.

1. The jury was unable to reach a verdict at the conclusion of Miller's first trial.

2. In this portion of our analysis, we assume *arguendo* that Szombathy's excursion onto Mil-

# I

## MOTION TO SUPPRESS

■ Miller complains that his Fourth Amendment rights were violated when Szombathy visited his property, looked around, and photographed the stolen trailer and conveyor belts. He argues that Szombathy's contact with law enforcement agents converted his actions into government conduct, and implicated the Fourth Amendment. Invocation of Fourth Amendment protections requires both an unreasonable intrusion into privacy and a finding of governmental conduct. Neither exists in this case. Consequently, we affirm the district court's denial of Miller's motion to suppress.

### A. The Government-Private Search Distinction

■ In the proceedings below, Miller moved to suppress the evidence derived from Szombathy's visits to Miller's property. He correctly noted that, although a search or seizure conducted by a private party does not violate the Fourth Amendment, if that individual acts as an instrument or agent of the state in conducting the search, Fourth Amendment interests are implicated. *Coolidge v. New Hampshire,* 403 U.S. 443, 487, 91 S.Ct. 2022, 2048, 29 L.Ed.2d 564 (1971). The district court rejected Miller's contention that Szombathy acted as an instrument of the government when visiting Miller's property. It reasoned that Szombathy's prior contacts with Agent Nelson and Sheriff Boyce were not such that they made him a government agent, and that he therefore acted in a private capacity. We agree.[2]

Our analysis starts with *United States v. Walther,* 652 F.2d 788 (9th Cir. 1981). There we noted that there is no bright line that distinguishes instances of "government" conduct from instances of "private" conduct, and that we should refer to certain general principles when analyzing cases in

ler's property constituted an unreasonable intrusion into Miller's privacy. The district court seems to have made the same assumption, since it did not discuss whether Szombathy's conduct even constituted a search.

the "gray area." *Id.* at 791.[3] We discussed those general principles:

> While a certain degree of governmental participation is necessary before a private citizen is transformed into an agent of the state, *de minimis* or incidental contacts between the citizen and law enforcement agents prior to or during the course of a search or seizure will not subject the search to fourth amendment scrutiny. The government must be involved either directly as a participant or indirectly as an encourager of the private citizen's actions before we deem the citizen to be an instrument of the state....

*Id.* From our review of earlier cases, we discerned that two critical factors in the "instrument or agent" analysis are: (1) whether the government knew of and acquiesced in the intrusive conduct, and (2) whether the party performing the search intended to assist law enforcement efforts or to further his own ends. *Id.* at 791–92.

Here the government concedes that it knew of and acquiesced in Szombathy's conduct. However, Szombathy acted out of a desire to recover his stolen property. The government argues that this consideration should conclude our analysis. We find this issue more complex.

This case involves several instances of police-private citizen contact: the invitation to Szombathy to come to Superior, the meeting in Superior when Agent Nelson gave tacit approval for Szombathy to go onto Miller's property, and Agent Nelson's accompanying Szombathy when he returned to Miller's place to photograph the trailer and conveyor belts. This case also involves two alleged invasions of privacy. Given this somewhat complicated set of facts, we have found it worthwhile to consider each element of the sequence separately.

 Miller complains that the government instigated the searches he complains of by inviting Szombathy to Superior. We must evaluate that invitation, however, in light of its scope and the reason it was extended. Agent Nelson merely contemplated that Szombathy look at the trailers that were parked along the frontage road and advertised "for sale." Miller has made no showing, as was his burden, *see United States v. Gumerlock,* 590 F.2d 794, 799 (9th Cir.), *cert. denied* 441 U.S. 948, 99 S.Ct. 2173, 60 L.Ed.2d 1052 (1979), that Nelson encouraged Szombathy to do something that Nelson, as a police officer, could not do. *See Walther,* 652 F.2d at 793. We refuse to prohibit the police from asking theft victims to identify whether a particular item was stolen from them as long as doing so does not somehow enable the police to intrude into a suspect's privacy vicariously when they could not do so directly.

 Miller also contends that Szombathy's conduct became government conduct when the officers gave tacit approval to Szombathy's plan to visit and gain access to Miller's property by pretending to be a prospective trailer buyer. We reject that argument. Because Szombathy had not proposed to do anything illegal, we see no reason why the officers should have restrained him or discouraged him from visiting Miller's property. *See generally* 1 W. LaFave, *Search and Seizure* § 1.6, at 115–17 (1978) [hereinafter *LaFave*]. Moreover, the record amply indicates that it was Szombathy's rather than the officers' idea that he visit Miller's property to look around. For example, at his first meeting with Agent Nelson and Sheriff Boyce, Szombathy initiated a discussion about his right to go onto Miller's property. When the officers told him that it was up to him, he replied, "[F]ine .... I'm going to go find that trailer. That's why I am over here." Miller has pointed to nothing in the record to suggest that the officers encouraged Szombathy to act on their behalf, or even planted the idea of conducting a private search. *See Gundlach v. Janing,* 401 F.Supp. 1089, 1093–94 (D.Neb.1975), *aff'd per curiam,* 536 F.2d 754 (8th Cir. 1976).

---

**3.** In *Walther,* as here, we found it unnecessary to decide what standard of review applies to determinations of whether a private citizen acted as a government agent for Fourth Amendment purposes. *Id.*

■ Finally, when Szombathy returned to Miller's property to take pictures, Agent Nelson followed him for protective purposes, and from a distance, watched him take photographs. This police accompaniment did not necessarily transform Szombathy's conduct into a government search or seizure. Upon reviewing both the intent and the effect of Agent Nelson's actions, we find nothing that necessitates application of the Fourth Amendment. Agent Nelson followed Szombathy to Miller's property primarily out of a concern for his safety, not out of any desire to reap the benefits of a private search. *See United States v. Coleman,* 628 F.2d 961, 964 (6th Cir. 1980). Upon arriving at Miller's property Nelson stationed himself off of Miller's property in a position where he could watch Szombathy with binoculars. By not accompanying Szombathy onto the property and attempting to remain out of sight, Nelson avoided casting a police aura around Szombathy's actions.

■ Our conclusion that Szombathy acted in a private capacity is consistent with the deterrent function that the exclusionary rule is designed to serve. *See generally* 1 LaFave, *supra,* § 1.6 at 112–13. The record shows that the government agents were consciously concerned about offending Miller's Fourth Amendment rights. In addition, the manner of their investigation did not create an unreasonable risk of privacy violations by Szombathy or any other private party. In inviting Szombathy to Superior, the officers acted lawfully in asking him to assist them in their investigative efforts by viewing the trailers parked along the highway to determine whether either was the stolen trailer. We need not decide what the officers' obligations would have been if, upon arriving in Superior, Szombathy had proposed to enter Miller's premises unlawfully, or if the officers could have reasonably foreseen an unlawful entry and such an entry occurred. *See generally id.* at 125; *Stapleton v. Superior Court,* 70

Cal.2d 97, 447 P.2d 967, 970–71, 73 Cal.Rptr. 575 (1968). Szombathy neither proposed, nor committed, such an entry.

### B. Consent Search

Although we find no error in the district court's decision that Szombathy acted in a private capacity, after reviewing the record we are also convinced that, even if Szombathy acted as an instrument of the government, Miller did not suffer an unreasonable, warrantless intrusion into his privacy.[4]

■ In stopping to look at the trailers that were parked along the frontage road and marked "for sale," Szombathy did nothing more than examine what had already been exposed to plain view. Only when he ventured into Miller's shop area and the woods near his residence did Szombathy enter into areas in which Miller could possibly claim an expectation of privacy. *See generally Wattenburg v. United States,* 388 F.2d 853, 857–58 (9th Cir. 1968). However, Szombathy acted neither without invitation nor without an escort. Upon learning that Szombathy was "looking for" trailers to haul mining equipment, Miller's son escorted him into Miller's shop area, where Szombathy saw his stolen trailer, and into a woods, where Szombathy saw his stolen conveyors. We can reasonably assume, in the absence of a showing to the contrary, that Miller's son had sufficient access to and control over Miller's shop area and the area surrounding his residence within the meaning of *United States v. Matlock,* 415 U.S. 164, 171 n. 7, 94 S.Ct. 988, 993 n. 7, 39 L.Ed.2d 242 (1974), to invite Szombathy onto the premises. *See United States v. Dubrofsky,* 581 F.2d 208, 212 (9th Cir. 1978); *United States v. Gulma,* 563 F.2d 386, 389 (9th Cir. 1977); 2 *LaFave, supra,* § 8.4(c). Miller can claim no reasonable expectation of privacy with regard to objects in plain view of those invited onto his premises. In placing the stolen trailer and conveyors on his property, Miller assumed the risk of

4. Although the issue of whether a search occurred was not raised below, *i.e.,* the district court assumed without discussion that one had occurred, the record is sufficiently developed to permit its review. The parties were ordered to be prepared to discuss this issue at oral argument, at which time both were afforded an opportunity to do so.

their observation by someone invited onto his property by those who shared access to it. *See United States v. Buettner-Janusch*, 646 F.2d 759, 764 (2d Cir.), *cert. denied*, 454 U.S. 880, 102 S.Ct. 126, 70 L.Ed.2d 107 (1981).

[11] Miller complains that Szombathy gained access to his premises by employing a "false pretext," *i.e.*, by posing as a prospective trailer buyer and not disclosing the real purpose of his visit. This alleged pretext did not spoil the fruits of Szombathy's visit. *See Lewis v. United States*, 385 U.S. 206, 211–12, 87 S.Ct. 424, 427–28, 17 L.Ed.2d 312 (1966); *United States v. Glassel*, 488 F.2d 143, 145 (9th Cir. 1973), *cert. denied*, 416 U.S. 941, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974). *See generally* 2 *LaFave, supra*, § 8.2(m). *Lewis* teaches that a government agent may pose as a private citizen, "accept an invitation to do business and enter upon the [defendant's] premises for the very purposes contemplated by the occupant." 385 U.S. at 211, 87 S.Ct. at 427. In walking about Miller's premises, Szombathy never exceeded the scope of his invitation. *See Glassel*, 488 F.2d at 145.

Szombathy's second visit to Miller's property, to take pictures, is also unassailable since it too was preceded by at least implicit consent. Szombathy testified that, upon returning to Miller's property, he encountered Miller's son, who was leaving, and explained that he wanted a second look at what had been shown to him previously. In the apparent absence of any objection to Szombathy's visit, we can conclude that this "search" was similarly premised on consent.

## II

### MOTION IN LIMINE

Miller also contends that the district court erred in denying his motion to exclude evidence pertaining to the three conveyor belts allegedly stolen from Szombathy when his trailer was stolen. His argument is twofold: (1) introduction of that evidence interfered with his Fifth Amendment right to a grand jury indictment in that it might have caused the jury to convict him of possessing stolen conveyor belts, an offense he was not indicted for, and (2) the prejudicial effect of the evidence outweighed its probative value. The trial court denied the motion on the ground that the conveyor belts were "part of the same transaction." We uphold the admission of that evidence.

Fed. R. Evid. 404(b) authorizes the introduction of "other crimes" evidence to help establish identity, subject only to the relevancy criteria of Rule 403. *See United States v. Lutz*, 621 F.2d 940, 944 (9th Cir.), *cert. denied*, 449 U.S. 859, 101 S.Ct. 160, 66 L.Ed.2d 75 (1980); *United States v. Sangrey*, 586 F.2d 1312, 1314 (9th Cir. 1978). Application of Rule 403 is committed to the trial court's discretion, and its rulings will not be disturbed absent an abuse of that discretion. *Lutz*, 621 F.2d at 944; *United States v. Riggins*, 539 F.2d 682, 683 (9th Cir. 1976) (per curiam), *cert. denied*, 429 U.S. 1045, 97 S.Ct. 749, 50 L.Ed.2d 758 (1977).

We find no abuse of discretion. The critical factual dispute at trial was whether the trailer in Miller's possession was the same as that stolen from Szombathy. Evidence that Miller possessed the conveyor belts had substantial probative value because it tended to confirm that the trailer in Miller's possession was the stolen trailer. *See United States v. White*, 645 F.2d 599, 602–03 (8th Cir.), *cert. denied*, 452 U.S. 943, 101 S.Ct. 3092, 69 L.Ed.2d 959 (1981); *United States v. Gibson*, 625 F.2d 887, 888 (9th Cir. 1980); *United States v. Day*, 591 F.2d 861, 871–73 and n. 25 (D.C. Cir. 1979) (as amended). Competent and relevant evidence of guilt is not inadmissible simply because it tends to show the commission of another offense. *See United States v. Masters*, 622 F.2d 83, 87 (4th Cir. 1980); *United States v. Waldo*, 470 F.2d 1359, 1361 (10th Cir. 1972); 2 *Weinstein's Evidence* ¶ 404[10], at 404–60–62 (1981).

In addition, because the "other crimes" evidence in this case stemmed from the same transaction that was in issue, the prejudicial effect of that evidence was less than that of "other crimes" evidence that pertains to separate criminal transactions.

Because only one event was in issue, the risk that the jury would infer a propensity for crime based on this "other crimes" evidence was negligible. *Cf. United States v. Two Eagle,* 633 F.2d 93, 96–97 (8th Cir. 1980) ("other crimes" evidence that was probative of identity held not to be "unfairly prejudicial").

Miller also contends that the introduction of that evidence created a risk that he would be (and may have been) convicted for possessing stolen conveyor belts, a crime with which he had not been charged by a grand jury. In raising this Fifth Amendment challenge to the introduction of the conveyor belt evidence, Miller relies heavily on *Stirone v. United States,* 361 U.S. 212, 217, 80 S.Ct. 270, 272, 4 L.Ed.2d 252 (1960), in which the Supreme Court ruled that "a court cannot permit a defendant to be tried on charges that are not made in the indictment against him." That reliance is misplaced. In *Stirone,* the government had to establish that the defendant's conduct interfered with interstate commerce in order to demonstrate its prosecutorial jurisdiction. In this regard, the indictment charged Stirone with affecting interstate shipments of sand. At trial, however, the prosecution introduced evidence of an effect on both sand and steel shipments. The court later instructed the jury in a manner that would have enabled it to find the interference with commerce element of the offense based on the steel shipment facts, which had never been presented to a grand jury. The Court thought that the combined effect of the evidence and the charge may have led the jury to convict "on a charge the grand jury never made against [the defendant.]" *Id.* at 219, 80 S.Ct. at 274. Consequently, *Stirone* cannot be read to exclude all "other crimes" evidence; rather, it excludes only that evidence which has no probative value with regard to the allegations

presented to and made by the grand jury. This case does not involve the total variance between pleading and proof, as was present in *Stirone,* that justifies invocation of the Fifth Amendment.[5]

### III

### TRIAL ADMINISTRATION

Miller also challenges several of the district court's rulings during the trial. We reject these contentions.

### A. *Effective Cross-Examination*

At the conclusion of Miller's case, his counsel called Szombathy to the stand and upon redirect examination sought to read into evidence testimony given by Szombathy during prior proceedings regarding the dimensions of the stolen trailer. That testimony was inconsistent with his testimony at trial. The court denied this request. Miller contends that he was denied his right to effective cross-examination.

Fed.R.Evid. 611 confers discretion upon the trial court to control the mode and order of interrogation and presentation. *See also United States v. Cutler,* 676 F.2d 1245, 1248–49 (9th Cir. 1982); *United States v. Bleckner,* 601 F.2d 382, 385 (9th Cir. 1979). We find no abuse of discretion here. The record shows that Miller's counsel questioned Szombathy extensively about his prior inconsistent statements regarding the trailer's dimensions early in the trial. Szombathy explained that during the earlier proceedings his testimony was based on trailer dimensions recorded on an inventory card, and that his trial testimony was based on measurements of the stolen trailer after its recovery. Miller's counsel again questioned Szombathy about his prior inconsistent statements later in the trial. A reading of Szombathy's prior testimony would have constituted a needless consumption of time.

5. We have reviewed the other cases cited by Miller, *e.g., Jeffers v. United States,* 392 F.2d 749 (9th Cir. 1968); *United States v. Critchley,* 353 F.2d 358 (3d Cir. 1965); *Danielson v. United States,* 321 F.2d 441 (9th Cir. 1963), and find them similarly inapposite. In those cases, the courts reversed convictions on Fifth Amend-

ment grounds because the prosecution had clearly failed to prove the specific crimes charged in the respective indictments, not because the prosecution's evidence tended to indicate the commission of crimes not named in the indictments.

*See* Fed.R.Evid. 611(a). Moreover, upon cross-examination, the government did not raise any issue that would have justified further inquiry into Szombathy's prior inconsistent statements. Finally, Miller's counsel fully argued Szombathy's prior inconsistent statements to the jury during his closing statement. Clearly, Miller's counsel had a full opportunity to challenge Szombathy's credibility during the trial, and he did so, both with interrogation and during closing argument. The jury had an adequate basis to make a discriminating appraisal of Szombathy's credibility. *Cf. Cutler,* 676 F.2d at 1249 (impeaching evidence gave jury adequate basis to apprise witness biases and motives). No Sixth Amendment violation occurred.

### B. Improper Prosecutorial Remark

■ Miller also challenges an alleged prosecutorial reference to his silence at trial. During its closing argument, the government reviewed the evidence that tended to show that Miller had once possessed the stolen trailer. It attempted to trace the movement of the trailer from the time of its theft, to when Szombathy saw his trailer on Miller's property, to when the trailer was found abandoned in a nearby woods. The prosecutor remarked:

> When you get to the jury room, there is one question I want . . . all of you [to] ask each other. . . . [T]he evidence is uncontradicted [that] the trailer that was found abandon[ed] in the woods [had been] in Howard Miller's possession. . . sometime in the fall of 1980. I want you to ask yourselves, if that is so, what happened to it? *What was Mr. Miller's explanation of what happened to that trailer? . . .*

Miller objected to this remark, and the court promptly admonished the jury to disregard any possible implication of guilt arising from Miller's election not to testify. Miller later raised the same objection in his motion for a new trial, which the court denied. The court reasoned that, when viewed in context, the prosecutorial remark was proper because it merely preceded a reiteration of testimony regarding Miller's pre-indictment explanation to a witness that he had gotten rid of or sold the trailer that the witness had previously painted for him. In other words, the prosecutor's reference was not to Miller's failure to testify, but to one of his pre-trial declarations.

■ Without deciding that the prosecutor's remark was improper, we note that any error that may have occurred was harmless beyond a reasonable doubt. The trial court properly responded to the remark by promptly instructing the jury that it could not draw any inferences from Miller's failure to testify. *See United States v. Buege,* 578 F.2d 187, 189 (7th Cir.), *cert. denied,* 439 U.S. 871, 99 S.Ct. 203, 58 L.Ed.2d 183 (1978). Moreover, the comment was not extensive, nor did the prosecution attempt to stress an inference of guilt from Miller's silence. *See Anderson v. Nelson,* 390 U.S. 523, 524, 88 S.Ct. 1133, 1134, 20 L.Ed.2d 81 (1968) (per curiam); *United States v. Sigal,* 572 F.2d 1320, 1323 (9th Cir. 1978); *United States v. Parker,* 549 F.2d 1217, 1221 (9th Cir.), *cert. denied,* 430 U.S. 971, 97 S.Ct. 1659, 52 L.Ed.2d 365 (1977).

### C. Admission of Evidence

■ Miller also complains that the photographs of the stolen trailer that were taken after the trailer was found abandoned in a woods were inadmissible under Fed.R.Evid. 401 and 403. The admission of this evidence was proper; there has been no abuse of discretion. This evidence was relevant because it showed the alterations that had been made to the trailer since its theft and gave rise to an inference of knowledge of its theft. *See generally Gibson,* 625 F.2d at 888 (upholding admission of evidence of defendant's criminal conduct following commission of charged offense because whole picture "indicates guilt"). Miller contends that this evidence was highly prejudicial, and further suggests that the record contains nothing indicating that Miller had made the alterations or placed the trailer in the woods. This argument is unconvincing. Szombathy observed his trailer on Miller's

property and noticed that various alterations had been made, presumably in an effort to disguise the trailer. The disappearance of the trailer and the other alterations permit the inference that Miller knew the trailer had been stolen.

### D. Jury Instructions

■ Finally, we reject Miller's argument that the jury instructions necessitate reversal. Miller objected below to the court's instruction on reasonable doubt[6], and now argues that the court should have given a more elaborate instruction regarding the meaning of that standard when the prosecution's case depends heavily on circumstantial evidence.[7] Miller had proposed such an instruction[8], which was similar to that discussed in *United States v. James,* 576 F.2d 223, 227 n. 3 (9th Cir. 1978). Our obligation on review is not to determine whether Miller's proposed instruction was preferable to the instruction actually given, but instead to determine whether the charge as given fairly and adequately apprised the jury of the meaning of the reasonable doubt standard. *See id.* at 226–27. Although this Circuit does not require an instruction defining "reasonable doubt," *see United States v. Witt,* 648 F.2d 608, 610–11 (9th Cir. 1981), an instruction that does so must convey the term's meaning accurately. *See United States v. Robinson,* 546 F.2d 309, 313–14 (9th Cir. 1976), *cert. denied,* 430 U.S. 918, 97 S.Ct. 1333, 51 L.Ed.2d 597 (1977). In *Robinson,* we expressly approved a definition of reasonable doubt similar to that used below. We again uphold the propriety of the "hesitate to act" language, and rule that the jury charge was adequate.

■ Miller also objects on appeal to the court's failure to give an "identification instruction" similar to that discussed in *United States v. Hodges,* 515 F.2d 650, 652–53 (7th Cir. 1975). Although Miller requested that such an instruction be given, he failed to raise a timely objection to its omission below or to otherwise comply with Fed.R. Crim.P. 30 in a manner that would either have given the trial court an opportunity to

6. The jury charge on this issue was as follows:

The presumption of innocence alone is sufficient to acquit unless the jurors are satisfied beyond a reasonable doubt of the Defendant's guilt after a careful and impartial consideration of all the evidence in the case.

It is not required that the Government prove guilt beyond all possible doubt. The test is one of reasonable doubt.

*A reasonable doubt is a doubt based on reason and common sense. It's the kind of a doubt that would make a reasonable person hesitate to act.*

Proof beyond a reasonable doubt must, therefore, be of such a convincing character that you would be willing to rely and act upon it unhesitatingly in the most important of your affairs.

This instruction is in substance that at 1 E. Devitt & C. Blackman, *Federal Jury Practice and Instructions* § 11.14, at 310–11 (3d ed. 1977).

7. The court's instruction further provided:

There are two types of evidence on which you can properly base a verdict. One is direct evidence, that is the testimony of an eyewitness. The other is circumstantial evidence, the proof of a chain of circumstances pointing to the commission of [the] offense.

As a general rule, the law makes no distinction between direct and circumstantial evidence but simply requires before convicting a Defendant the jury be satisfied of the Defendant's guilt beyond a reasonable doubt from all of the evidence.

This instruction is similar to that upheld in *United States v. James,* 576 F.2d 223, 227 n. 2 (9th Cir. 1978).

8. Miller's proposed instruction was similar to that given by the court, except that in place of the italicized language in note 6, *supra,* Miller would have substituted the following:

A reasonable doubt exists whenever, after careful and impartial consideration of all the evidence, you jurors do not feel convinced to a moral certainty that the Defendant is guilty of the charge. And so, if you view the evidence in this case as reasonably permitting either of two conclusions, one pointing to innocence and the other pointing to guilt, you must necessarily adopt the conclusion pointing to innocence, because so long as that is a reasonable conclusion and it exists, it would be impossible to find guilt beyond a reasonable doubt, because the very existence of a reasonable alternative on the other side would preclude you from finding guilt beyond a reasonable doubt.

This language apparently comes from *James,* 576 F.2d at 227 n. 3. We upheld an instruction which excluded similar language over a defendant's objection in *United States v. Grayson,* 597 F.2d 1225, 1230 (9th Cir.), *cert. denied,* 444 U.S. 875, 100 S.Ct. 157, 62 L.Ed.2d 102 (1979).

correct the alleged error or have indicated that a formal objection would have been futile.

## IV

### MOTION TO ACQUIT

The district court's denial of Miller's post-trial motion for acquittal was proper because, when viewed in the light most favorable to the prosecution, the evidence would enable a reasonable jury to find Miller guilty beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Federico,* 658 F.2d 1337, 1343 (9th Cir. 1981). Circumstantial evidence is sufficient to sustain a conviction, and the government's evidence need not exclude every reasonable hypothesis consistent with innocence. *Federico,* 658 F.2d at 1343; *United States v. Nelson,* 419 F.2d 1237, 1240–41 (9th Cir. 1969).

AFFIRMED.