**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Robert V. SNOWADZKI,**
**Defendant-Appellant.**

**No. 83–3053.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 4, 1984.

Decided Jan. 17, 1984.

Lance Caldwell, Asst. U.S. Atty., Portland, Or., for plaintiff-appellee.

Stephen Sady, Asst. Federal Public Defender, Portland, Or., for defendant-appellant.

Before WRIGHT, TANG, and ALARCON, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Snowadzki appeals from a conviction on two counts of filing false tax returns. The convictions resulted from his failure to report income gained from private sales of airplane engines. He contends that his conviction must be reversed because the government presented documents that were illegally seized by Pugh, a fellow employee. We hold that Pugh did not act as a government agent when he took the documents and affirm.

FACTS

Snowadzki is a Portland businessman involved in the sale of aircraft parts and accessories. In the years material to the indictment, he worked as Portland branch supervisor for Cooper Aeromotive which is engaged primarily in the sale of new aircraft engines, parts, and accessories.

In addition to his corporate duties, Snowadzki privately engaged in the resale of used aircraft engines, or "cores." He maintained a log of these outside transactions and openly discussed them with other Cooper employees, but never reported the sales to the IRS.

On April 12, 1979, another Cooper employee, Keith Pugh, called the IRS and told an agent that Snowadzki had significant unreported income. Pugh described Snowadzki's activities and asked if copies of Snowadzki's records would be helpful. The

agent said they would. Pugh also inquired about a reward and discovered that one might be available.

Pugh took the log books from Snowadzki's private desk, copied them, and delivered them to the IRS agent on the following day. He had no authority to enter the desk or copy the documents.

After receiving the papers, the IRS examined Snowadzki's returns and interviewed him on September 4, 1979 at his office during business hours. The agents advised him of his *Miranda* rights. He indicated that he understood them and agreed to talk.

Once during the interview, Snowadzki says he stated he ought to have an attorney present. He alleges the agents reassured him and continued their questioning. The agents deny that Snowadzki ever referred to his right to have counsel present.

At the interview, Snowadzki agreed to produce records of his finances. He failed to produce them and agents obtained them from third parties. Some testimony was introduced at trial regarding the initial agreement and the means used to obtain the records.

On September 5 and October 1, 1979, the IRS issued administrative summonses to Snowadzki's accountant and to the banks where Snowadzki had checking accounts. The summonses complied with Section 7602 of the Internal Revenue Code and produced records used at trial.

Snowadzki was tried before a jury and convicted on two counts of filing false tax returns. He was sentenced to 60 days imprisonment on the first count, to be served on consecutive weekends. He was given probation on the second count, on condition that all taxes be paid and that he pay the costs of prosecution.

ANALYSIS

A. *Pugh's Seizure of Snowadzki's Documents.*

Snowadzki contends that Pugh's seizure of his documents violated the fourth amendment. There is no dispute that the seizure was unlawful. The question is whether Pugh acted on his own behalf or as a government agent. *See Coolidge v. New Hampshire,* 403 U.S. 443, 487, 91 S.Ct. 2022, 2048, 29 L.Ed.2d 564 (1971); *Burdeau v. McDowell,* 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921).

(1) *Standard of Review*

The court's findings of fact at the suppression hearing are reviewed by the "clearly erroneous" standard. *United States v. Walther,* 652 F.2d 788, 791 (9th Cir.1981). The standard of review for the court's ultimate finding that Pugh did not act as a government agent is less clear. *Id.; United States v. Miller,* 688 F.2d 652, 657 n. 3 (9th Cir.1982). We need not decide which standard applies as the court's conclusion was correct under either clearly erroneous or *de novo* review.

(2) *Pugh Did Not Act As an Agent Because the Government Did Not Participate In Or Encourage His Seizure Of the Records*

To determine whether a private person acted as a government agent in an illegal search and seizure, this court considers "(1) whether the government knew of and acquiesced in the intrusive conduct, and (2) whether the party performing the search intended to assist law enforcement efforts or to further his own ends." *Miller,* 688 F.2d at 657; *Walther,* 652 F.2d at 791–92.

The burden of establishing government involvement in a private search rests on the party objecting to the evidence. *Miller,* 688 F.2d at 657; *United States v. Gumerlock,* 590 F.2d 794, 799 (9th Cir.) (en banc), *cert. denied,* 441 U.S. 948, 99 S.Ct. 2173, 60 L.Ed.2d 1052 (1979). The court must consider the evidence "in light of all the circumstances of the case." *Coolidge,* 403 U.S. at 487, 91 S.Ct. at 2049.

Snowadzki has not shown that the IRS knew of or encouraged Pugh's seizure of his records. The court's findings dispose of this contention. It found that the IRS agent "had nothing to do with where the records were going to be obtained, [or] how

they would be obtained. He simply responded in answer to a question that the records would be of some help in evaluating the informer's claim."

The court found also that Pugh acted on his own. While Pugh may have acted in part from a desire for a reward, there is no evidence that the seizure was motivated by IRS prompting or encouragement. *See Miller,* 688 F.2d at 657. This distinguishes the case from those on which Snowadzki relies, where government agents encouraged persons to take actions that the agents could not take. *See Walther,* 652 F.2d at 792–93; *Corngold v. United States,* 367 F.2d 1, 5–6 (9th Cir.1966).

The findings are supported by the record and are not clearly erroneous. Pugh did not act as a government agent. "A private person cannot act unilaterally as an agent or instrument of the state; there must be some degree of governmental knowledge and acquiescence." *United States v. Sherwin,* 539 F.2d 1, 6 (9th Cir.1976) (en banc). *See also United States v. Veatch,* 647 F.2d 995, 999 (9th Cir.1981); *United States v. Stevens,* 601 F.2d 1075, 1080 (9th Cir.), *cert. denied,* 444 U.S. 917, 100 S.Ct. 232, 62 L.Ed.2d 172 (1979).

(3) *The Government Did Not Conduct a Fourth Amendment "Search" by Reading the Documents that Pugh Delivered Into Its Possession*

■ Snowadzki contends that the IRS agents violated the fourth amendment by examining his records without obtaining a warrant. He relies on *Walter v. United States,* 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980), in which a plurality held that the government violated the fourth amendment by *viewing* films which had been seized by third persons.

This reliance is misplaced. There was no majority opinion in *Walter,* and both the plurality and dissent emphasized that the case turned on "bizarre" facts. *Id.* at 651, 666, 100 S.Ct. at 2399, 2406 (Blackmun, J., dissenting). The plurality found that the government conducted a search by viewing the films because the sealed film packages were similar to locked containers. *Id.* at

654–56, 100 S.Ct. at 2400–01. *Cf. Arkansas v. Sanders,* 442 U.S. 753, 758, 99 S.Ct. 2586, 2589, 61 L.Ed.2d 235 (1979); *United States v. Chadwick,* 433 U.S. 1, 10, 97 S.Ct. 2476, 2482, 53 L.Ed.2d 538 (1977). It declined to decide whether the government would have had to obtain a warrant if the third parties had viewed the films first. *Walter,* 447 U.S. at 657 n. 9, 659 n. 14, 100 S.Ct. at 2402 n. 9, 2403 n. 14. These factors distinguish *Walter* from this case.

Many of the third party search cases have involved books, records or documents turned over to the government. *See, e.g., Burdeau,* 256 U.S. at 470–71, 41 S.Ct. at 574; *Sherwin,* 539 F.2d at 4–5. The courts have never indicated that the government conducts a "search" by reading documents in its possession.

Once Pugh delivered the incriminating log books to the IRS, the agents needed no warrant to read their contents.

B. *Other Contentions*

Snowadzki's other arguments do not warrant extensive discussion:

■ (1) The IRS agents did not violate Snowadzki's right to counsel at their initial interview. The trial court found that Snowadzki did not specifically request counsel. This was a reasonable finding from disputed testimony and may not be reversed unless clearly erroneous. *See United States v. Barrett,* 703 F.2d 1076, 1087 (9th Cir.1983); *United States v. Thierman,* 678 F.2d 1331, 1334 (9th Cir.1982); *United States v. Booth,* 669 F.2d 1231, 1235–36 (9th Cir.1981).

Further, the court found that the questioning was not "custodial interrogation" within the meaning of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and *Edwards v. Arizona,* 451 U.S. 477, 484, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378 (1981). This finding must be upheld unless clearly erroneous. *Booth,* 669 F.2d at 1235–36.

At most, the agents violated an internal regulation. Absent unusual circumstances, the exclusionary rule does not apply when IRS agents violate internal regulations,

without also infringing on constitutional or statutory rights. *United States v. Caceres,* 440 U.S. 741, 755–57, 99 S.Ct. 1465, 1473–74, 59 L.Ed.2d 733 (1979). We find no unusual circumstances here.

■ (2) Snowadzki did not object at trial to the evidence of his failure to produce documents. Admission of the evidence is not reviewable unless it constituted "plain error." Fed.R.Crim.P. 52; *United States v. Wilson,* 690 F.2d 1267, 1273–74 (9th Cir. 1982).

There was no plain error here. The government elicited the testimony simply to show how the agent obtained the records. It did not emphasize Snowadzki's refusal to supply them. *Cf. United States v. Prescott,* 581 F.2d 1343, 1350–51 (9th Cir.1978).

■ (3) The trial court found that the administrative summonses were issued before the case was referred for prosecution and before the IRS abandoned civil remedies. These findings are not clearly erroneous. *United States v. LaSalle National Bank,* 437 U.S. 298, 319 n. 21, 98 S.Ct. 2357, 2368 n. 21, 57 L.Ed.2d 221 (1978); *United States v. Stuckey,* 646 F.2d 1369, 1373 (9th Cir.1981), *cert. denied,* 455 U.S. 942, 102 S.Ct. 1436, 71 L.Ed.2d 653 (1982).

■ (4) The trial court correctly imposed the costs of prosecution on Snowadzki. *United States v. Chavez,* 627 F.2d 953 (9th Cir.1980), *cert. denied,* 450 U.S. 924, 101 S.Ct. 1376, 67 L.Ed.2d 353 (1981).

## CONCLUSION

Pugh was not a government agent when he took the log books. The court correctly admitted them into evidence. Snowadzki's other contentions lack merit.

The judgment is affirmed. The mandate will issue now.