**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Byron V. SKINNA,
Defendant–Appellant.**

**No. 88–3286.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 5, 1989.

Decided Aug. 14, 1990.

As Amended on Denial of Rehearing
and Rehearing En Banc May 1, 1991.

Charles Merriner, Anchorage, Alaska, for defendant-appellant.

Joseph W. Bottini, Asst. U.S. Atty., Anchorage, Alaska, for plaintiff-appellee.

Before CANBY, WIGGINS and FERNANDEZ, Circuit Judges.

CANBY, Circuit Judge:

Byron Skinna Sr. appeals his conviction for unlawful transportation in interstate commerce of illegally taken herring spawn on kelp, 16 U.S.C. § 3372(a)(2)(A). He contends that the Alaska fishing regulations underlying his Lacey Act conviction are invalid because they conflict with the Alaska National Interest Lands Conservation Act (ANILCA), 16 U.S.C. §§ 3113, 3114. We affirm.

## BACKGROUND

Skinna is a Tlingit Indian who lives in Klawock, Alaska, a village of less than 300 people. Skinna, in a group effort with other native Alaskans, sent 580 pails of herring spawn on kelp packed in a brine solution from Prince Wales Island, Alaska to Seattle, Washington. Skinna had arranged to sell the shipment for $91,000 to Sakurai, a Canadian resident. Sakurai planned to process the herring spawn and sell them to Japan, where they are considered a rare delicacy. After their seizure, the government sold the pails of herring spawn on kelp for $274,000 at auction. It estimated the total weight at 32,000 pounds.

Skinna was convicted under the Lacey Act, which makes it unlawful to "transport, [or] sell ... in interstate or foreign commerce ... any fish or wildlife taken, possessed, transported, or sold in violation of any law or regulation of any State...." 16 U.S.C. § 3372. The indictment alleged that Skinna "did knowingly transport and sell in interstate commerce herring spawn on kelp ... knowing that said herring spawn on kelp had been taken and possessed for other than subsistence purposes in violation of ... [Alaska law] and did thereby knowingly engage in conduct with the intent to sell the illegally taken and possessed herring spawn on kelp...."

Skinna was sentenced to three years probation, 200 hours community work, and a $5,000 fine. He now appeals.

## DISCUSSION

Skinna's conviction under the Lacey Act is based on a violation of Alaska law. The applicable Alaska regulation permits the taking of herring spawn on kelp only under a subsistence fishing permit. 5 Alaska Admin.Code § 01.730(a). "Subsistence use" is defined by statute as "the noncommercial, customary and traditional uses of wild, renewable resources by a resident domiciled in a rural area ... for the customary trade, barter, or sharing for personal or family consumption." Alaska Stat. § 16.05.940(30). In the absence of special regulation, the annual possession limit for herring spawn on kelp taken under a subsistence permit is 32 pounds for an individual or 158 pounds for a household. 5 Alaska Admin.Code § 01.730(g). Subsistence-taken fish or their eggs [1] may not be bought or sold, unless otherwise permitted by regulation. *Id.* at § 01.010(d).

There is very little question that Skinna violated some or all of these Alaska laws, and he does not seriously contend to the contrary. While he had a subsistence permit to take herring spawn on kelp, and was joined in the enterprise by others with such permits, Skinna and his group took many times more than their annual possession limit, and Skinna had arranged for the commercial sale of the spawn.

Skinna's contention on appeal, however, is that these Alaska laws are invalid because they conflict with protections of subsistence fishing provided by federal law, specifically the Alaska National Interest Lands Conservation Act ("ANILCA"), 16 U.S.C. §§ 3113, 3114. The degree to which we can entertain Skinna's argument is greatly circumscribed by the fact that he never directly presented it to the district court. To make clear the problem, it is necessary briefly to describe the applicable portions of ANILCA.

ANILCA contains many provisions governing conservation on federal lands in Alaska. Title VIII gives subsistence fishing a priority over other fishing in federal waters, such as those involved here. 16 U.S.C. §§ 3111–3126. Congress declared the necessity "to protect and provide the opportunity for continued subsistence uses on the public lands by Native and non-Native rural residents." *Id.* at § 3111(4). ANILCA defines subsistence uses as "cus-

---

1. Skinna makes no argument that herring spawn on kelp do not fall within the prohibition of section 01.010(d) because they are not eggs of subsistence-taken fish. Indeed, his argument on appeal is that the prohibition on sale, like other provisions of Alaska law, is inconsistent with ANILCA. For the resolution of Skinna's appeal, it is not necessary that section 01.010(d) apply, because Skinna's conduct violated the other provisions of Alaska law cited above governing subsistence taking of herring spawn on kelp, and specifying permissible subsistence uses.

tomary and traditional uses by rural Alaska residents of wild, renewable resources ... for barter, or sharing for personal or family consumption; and *for customary trade.*" *Id.* at § 3113 (emphasis added). "Customary trade" is not defined, but presumably differs from barter, which is defined as a noncommercial exchange for items other than money. *See id.* at § 3113(2).

ANILCA directed the Secretary of Interior to implement the statute by regulations, *id.* at 3115(a)–(c), but the federal regulatory scheme was stayed if Alaska adopted laws governing subsistence hunting and fishing on public lands that were consistent with ANILCA. *Id.* at § 3115(d). In that event, state law superseded the applicable ANILCA sections. *Id.* State rulemaking structures had to include local advisory committees. Persons aggrieved by the failure of the state or federal government to provide priority for subsistence uses were authorized, after the exhaustion of administrative remedies, to bring a civil action in federal court, which was empowered to direct the state to adopt new regulations. *Id.* at § 3117(a). That remedy was "the sole Federal judicial remedy created by this subchapter...." *Id.* at § 3117(c).

"Given the choice between federal regulation or self-regulation with federal oversight, Alaska chose the latter." *Kenaitze Indian Tribe v. Alaska,* 860 F.2d 312, 314 (9th Cir.1988), *cert. denied,* 491 U.S. 905, 109 S.Ct. 3187, 105 L.Ed.2d 695 (1989). Its chosen path has not been a smooth one.

Its first subsistence regulations were invalidated on state law grounds by the Alaska Supreme Court in *Madison v. Dep't of Fish & Game,* 696 P.2d 168 (Alaska 1985). That event caused the Secretary of Interior to declare the state law to be no longer consistent with ANILCA, and to threaten a federal takeover of subsistence regulation unless the state enacted a consistent law by June 1, 1986. *See Bobby v. Alaska,* 718 F.Supp. 764, 813–14 (D.Alaska 1989). The state then enacted its second subsistence use law, which is in question in this case.[2]

Skinna's argument on this appeal is based on the alleged inconsistency of Alaska's laws with the provision of ANILCA that defines subsistence use to include "customary trade." 16 U.S.C. § 3113. As one might deduce from the above description of ANILCA, there are several possible procedural hurdles in Skinna's way, particularly in light of his failure properly to raise his contention in the district court. Because we find one issue dispositive, we do not rule upon the others.

 Skinna contends that the Tlingit and Haida people traditionally engaged in large-scale trading of fish and spawn comparable to the sale that was arranged in this case. He presented no evidence in district court of any such customary trading. Skinna argues that he had no such burden; it was the duty of the prosecution to prove that he was *not* engaged in customary trading. Skinna, however, offered only an unclear instruction[3] and made no

---

**2.** After the events in issue here, the Supreme Court of Alaska invalidated the exclusion of urban residents from subsistence hunting and fishing. *McDowell v. Alaska,* 785 P.2d 1 (Alaska 1989). We do not interpret this decision as affecting the Alaska regulations as applied to Skinna, a rural resident, at the time of the events in issue here.

**3.** Skinna offered an instruction setting forth seven elements of the offense that the prosecution was required to prove beyond a reasonable doubt. One element was "[t]hat the Defendant charged specifically intended to sell, and not barter, or use for customary trade, the herring spawn." This proposed element does not clearly make Skinna's point, because it is susceptible to the reading that sale of the spawn is a mutually exclusive alternative to barter or customary trade. The instruction was also defective in

proposing as an element to be proved beyond a reasonable doubt a matter that was clearly a question of law: "That the regulations of the State of Alaska criminalizing the commercial transaction in herring spawn, on kelp, are valid." In light of the deficiencies of Skinna's offered instruction, and his failure to object, Skinna did not properly present to the district court his contention, now raised on appeal, that the government had the burden of proving that the customary trade of the Tlingit and Haida people did not encompass the transaction in issue. *See United States v. Miller,* 688 F.2d 652, 662–63 (9th Cir.1982) (defendant who offered identification instruction, but failed to object to its omission or to the instruction that was given, failed to preserve point for appeal); Fed.R. Crim.P. 30. We therefore review only for plain error.

objection to the instructions that were given. We could overlook that failure only if the district court's action amounted to plain error—"a highly prejudicial error affecting a substantial right." *United States v. Bustillo,* 789 F.2d 1364, 1367 (9th Cir.1986); Fed.R.Crim.P. 52(b). There was no plain error here, because the prosecution was required to prove, and did prove, that Skinna was not involved in customary subsistence as Alaska defines it: "the *noncommercial,* customary and traditional uses of wild, renewable resources for direct personal or family consumption ..., and for the customary trade, barter, or sharing for personal or family consumption." Alaska Stat. § 16.05.940(30). Alaska boards of fish and game are empowered to identify customary uses; under one of their criteria "customary trade may include limited exchanges for cash, but does not include significant commercial enterprises." 5 Alaska Admin.Code § 99.010(b)(7). Skinna had never sought to have his proposed use identified as customary, and his proposed sale of 32,000 pounds of spawn on kelp for $91,000 hardly falls within the regulatory criterion.

■ Skinna's primary argument now is that these Alaska laws, under which his case was submitted to the jury, were invalid for conflict with ANILCA's protection of customary trade, 16 U.S.C. § 3113, which Skinna views as broader than Alaska's. Skinna, however, never made a record in district court that will permit us to decide this issue in his favor. He offered no evidence at all concerning customary trade. He offered instructions that combined his rights as an Indian with a right under ANILCA to customary trade. The district court correctly ruled that any aboriginal rights had been extinguished by the Alaska Native Claims Settlement Act, 43 U.S.C. §§ 1601–1628, and that no treaty or reservation was involved in the case. The portion of the instruction based on Skinna's right to customary trade under ANILCA was without any support in the evidence, because Skinna had made no attempt to

show the extent of customary trade. Accordingly, the district court did not err in rejecting the offered instructions.

Once again, Skinna asserts that he had no burden to introduce such evidence. But we cannot accept the proposition that the prosecution has the affirmative burden of showing that the statutes under which it is prosecuting have not been preempted by federal law, and of disproving the existence of any set of facts that might support a claim of preemption. The burden of asserting and supporting a defense of preemption rested on Skinna, and he did not carry it. *Cf. United States v. Baker,* 641 F.2d 1311, 1320 (9th Cir.1981) (Indians convicted of criminal contempt for fishing in violation of injunction had burden of raising defense that they fell within a treaty fishing exception, even though prosecution bore ultimate burden of persuasion); *United States v. Boyd,* 491 F.2d 1163, 1167 (9th Cir.1973) (defendant convicted of violating regulation had burden of showing that regulation was beyond authority granted by statute delegating regulatory power).

Skinna attempts to avoid his burden by asserting that he simply cannot be convicted under a "void" statute. Even if we were to accept the proposition that a direct conflict between ANILCA and the Alaska statutes would automatically render the latter void on their face, we find no such direct conflict here. For all we know from this record, customary trade of the Alaska peoples may never have encompassed large commercial transactions. If that is the case, then there is no conflict between Alaska's laws and ANILCA. Consequently, Skinna's claim that the Alaska statutes are void must necessarily be reduced to a claim that they are void in their application to proven instances of customary trade. There is no evidence here to support such a claim.

We therefore reject Skinna's claim that the statutes under which he was prosecuted were invalid by reason of conflict with ANILCA.[4] Because that ruling dis-

---

4. Skinna also argues that the limitations that Alaska places on subsistence uses violates the

priority that ANILCA confers on such uses. *See* 16 U.S.C. § 3114. This argument fails along

poses of the appeal, we do not reach other issues regarding the failure of Skinna to seek administrative relief from Alaska, the effect of the Secretary of Interior's withholding of federal regulation in favor of Alaska's, the effect of the exclusive civil remedy provisions of 16 U.S.C. § 3117, or other such matters.[5]

## CONCLUSION

The judgment of the district court is AFFIRMED.

with his primary contention; he has failed to show that he was engaged in a subsistence use.

**5.** Skinna asserts that if his ANILCA claim is rejected for failure properly to present it in district court, then ineffective assistance of counsel will become an issue. He elaborates no further, and the record is clearly insufficient to determine any questions of ineffective assistance on this record on direct appeal. We therefore do not address the question.