980 F.2d 739
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Chris John GUDAL, Defendant-Appellant.
 No. 92-30014.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 5, 1992.
Decided Nov. 27, 1992.
 
 Before TANG, BRUNETTI and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Chris John Gudal appeals his conviction and sentence for knowingly and intentionally manufacturing marijuana in violation of 21 U.S.C. § 841(a)(1). He asserts that evidence obtained by use of a search warrant should have been suppressed because the warrant was based upon information from an informant who had obtained it by trespassing on Gudal's property. He also asserts that there should have been an evidentiary hearing regarding misstatements in and omissions from the warrant. Finally, he asserts that the guideline requirement that marijuana plants be equated to quantities of marijuana is unconstitutional and that he should have been given a downward departure on account of his mental condition. We affirm.
 
 BACKGROUND
 
 3
 Gudal was engaged in growing marijuana at his property just outside the Newberg, Oregon area. In March of 1991, he bragged that he had a 200-plant grow going forward and that he would harvest the marijuana within two weeks. Unfortunately for him, he made this boast to a person who had been an informant for the police department.
 
 
 4
 The informant decided to give the information to the police but first undertook his own investigation. He went upon Gudal's property so that he could confirm the presence of a marijuana grow. Once there, he cut a lock on a barn where he thought the grow was. Upon doing that he detected the strong smell of growing marijuana and a bright light issuing from underneath an interior door. He then took his information to the police. They, among other things, confirmed that Gudal did reside on the property, that a good deal of electricity was being used, and that the electricity usage was consistent with the running of a number of Halide lamps.
 
 
 5
 Based upon this information, a warrant was applied for and issued, and the ultimate result was Gudal's conviction and sentence after a failed suppression motion and a guilty plea.
 
 
 6
 Because Gudal's principal claim is that the informant's illegal activity should be ascribed to the police department, we must say a few words about the relationship between the informant and the police.
 
 
 7
 The informant had, as the warrant affidavit indicated, aided the police in the past. He had participated in four controlled buys--drug purchases under the direction and control of police officers--three of which had resulted in warrants and arrests. In his capacity as an informant he had been paid for his services, and compensation was his motivation for aiding law enforcement. The affidavit contained this information also.
 
 
 8
 The affidavit did not mention the fact that the informant had signed an agreement, called a "Special Consent Form," in 1988. In that agreement, he stated his understanding that he was not to participate "in any investigation or any criminal activities, unless the investigation is being supervised" by the police. He also agreed that he would "not break any laws or commit any crimes while working" for the police and would not attempt to entrap anyone.
 
 
 9
 Despite the agreement, the officers stated that the informant was not acting as their agent at the time of his own investigation and that they had no idea of what he was doing or of what his intentions might be in that regard. In fact, they had not had contact with him or received information from him for about nine months prior to the event.
 
 
 10
 The district court did not consider these facts sufficient to sustain a suppression motion. Hence the denial of the motion, the guilty plea and this appeal.
 
 DISCUSSION
 
 11
 A. Government Agent.
 
 
 12
 Gudal first claims that the informant should have been called as a witness because evidence might have been developed to show that the police and the informant were working together on this case when the trespass took place. However, because of the general importance of informant confidentiality to law enforcement, disclosure is not required absent a showing of a demonstrable need. Mere speculation will not suffice. United States v. Johnson, 886 F.2d 1120, 1122 (9th Cir.1989), cert. denied, 494 U.S. 1089, 110 S.Ct. 1830, 108 L.Ed.2d 959 (1990). Thus, we leave the question of whether a hearing, in camera or otherwise, is required to the discretion of the district court. Id. On this record, the district court did not err. Gudal's assertion, wish, hope that the informant might tell a different story is not sufficient to overturn the court's decision.
 
 
 13
 Gudal then claims that even on the existing record suppression is required because the informant had a contract with the police and they ultimately accepted his information. Of course, unless a private person is acting as a state agent the Fourth Amendment is not implicated in his activities. See United States v. Miller, 688 F.2d 652, 656 (9th Cir.1982). In deciding whether the person is a state agent we have identified the two critical factors as: "(1) the government's knowledge and acquiescence, and (2) the intent of the party performing the search." United States v. Walther, 652 F.2d 788, 792 (9th Cir.1981). We have often applied those factors in deciding cases in this area and we must do so here. See, e.g., United States v. Snowadzki, 723 F.2d 1427, 1429-30 (9th Cir.) (where government did not know that informer was going to conduct a search, he was not an agent, even though he had been told that records would be useful and a reward might be available), cert. denied, 469 U.S. 839, 105 S.Ct. 140, 83 L.Ed.2d 80 (1984); United States v. Veatch, 674 F.2d 1217, 1221-22 (9th Cir.1981) (where private person obtained items without knowledge of government and later turned those over to government agents, he was not a government actor), cert. denied, 456 U.S. 946, 102 S.Ct. 2013, 72 L.Ed.2d 469 (1982).
 
 
 14
 Here, the district court determined that the police had no prior knowledge of the informant's detective work and had done nothing to encourage that kind of activity. In fact, the contract with the informant expressly stated that he was to do no such thing. Thus, the first Walther element was not met.
 
 
 15
 We do not agree with Gudal's assertion that the mere existence of the written agreement should change the analysis and generate a different result. Walther itself involved what amounted to an implied agreement because the government knew that the informant was searching other people's property and the government had essentially encouraged him to do so. 652 F.2d at 790-91, 793. See United States v. Koenig, 856 F.2d 843, 847 n. 1, 849-50 (7th Cir.1988) (Walther facts bespeak an implied agency relationship). Moreover, nothing in this case tends to show that the informant had been retained to perform general law enforcement activities in an undercover capacity of some kind. His activities were to be limited to those where he was under police supervision and he was to do nothing illegal in performing them. Furthermore, he had never done anything like this before, and there was no evidence to show that he was emboldened by any assurance that his picaresque activities would be overlooked. See United States v. Malbrough, 922 F.2d 458, 461-63 (8th Cir.1990) (agreement to make purchases under supervision did not make informant an agent for all purposes), cert. denied, 111 S.Ct. 2907, 115 L.Ed.2d 1071 (1991); United States v. Bennett, 729 F.2d 923, 925 (2d Cir.) (informant instructed not to conduct illegal searches but did so anyway; evidence was used), cert. denied, 469 U.S. 1075, 105 S.Ct. 572, 83 L.Ed.2d 512 (1984).
 
 
 16
 Nor do we agree that ultimate use of the information amounts to ratification. If mere use were enough, suppression would always follow because use is what is always at issue. Gambino v. United States, 275 U.S. 310, 48 S.Ct. 137, 72 L.Ed. 293 (1927) is not to the contrary. That case involved significant entanglements between state officers and the federal government. Id. at 315, 48 S.Ct. at 138. Thus, Gambino is very similar to Walther itself.
 
 
 17
 In fine, in this case the police engaged in no wrongdoing. They did not directly or indirectly cause the intrusion upon Gudal's property. That they were made aware of Gudal's own illegal activity as a result of someone else's does not justify suppression of the evidence.
 
 
 18
 B. Franks[1] Hearing.
 
 
 19
 Gudal claims that he was entitled to an evidentiary hearing because there were misstatements in and omissions from the warrant affidavit. See United States v. Motz, 936 F.2d 1021, 1023-24 (9th Cir.1991); United States v. DiCesare, 765 F.2d 890, 894-95 (9th Cir.), amended, 777 F.2d 543 (1985). Our review of the record requires us to disagree. To the extent that Gudal claims that the informant was a police agent, he is, as we have already shown, in error. Likewise, given the fact that the magistrate was told of the informant's record and of his trespasses we see no possibility that the added information that he was also a contract breaker would have affected the magistrate's decision. Furthermore, Gudal's claim that the informant was engaging in other criminal acts is without evidentiary support and his assertion that the magistrate was (or could have been) misled by the presentation of electrical usage data has no efficacy whatever.
 
 
 20
 Thus, each of the claims falls short of what is required to entitle a defendant to a Franks hearing. Neither together nor apart can they serve that function.
 
 
 21
 C. Sentencing.
 
 
 22
 In calculating offense levels under the Guidelines, if the offense involved "50 or more marijuana plants, [the sentencing judge must] treat each plant as equivalent to 1 KG of marihuana" unless the actual weight is greater, in which case the actual weight is to be used. U.S.S.G. § 2D1.1(c) (footnote). Gudal claims that is unconstitutional. We have often held to the contrary. See United States v. Jordan, 964 F.2d 944, 946-47 (9th Cir.), cert. denied, 61 U.S.L.W. 3355 (1992); United States v. Belden, 957 F.2d 671, 675-76 (9th Cir.), cert. denied, 113 S.Ct. 234 (1992).
 
 
 23
 Gudal also claims that the district court erred when it failed to depart downward based upon his chronic depression and schizoid personality. To the extent that the district court's refusal was based upon its factual determination that Gudal's mental capacity was not significantly reduced, we find no clear error. Cf. United States v. Morales, 972 F.2d 1007, 1010-11 (9th Cir.1992). The information before the court did not compel a conclusion that Gudal's mental capacity was significantly reduced or that it contributed to the offense. U.S.S.G. § 5K2.13. To the extent Gudal's argument is actually a claim that the district court erroneously exercised its discretion, we have no jurisdiction to review the assertion. See United States v. Robinson, 958 F.2d 268, 272 (9th Cir.1992). Of course, the court need not expressly state that it is exercising its discretion. United States v. Garcia-Garcia, 927 F.2d 489, 491 (9th Cir.1991).
 
 
 24
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)