**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Jesus BAZAN, Jr., Manuel Aleman, and Graciela Flores, Defendants-Appellants.**

**No. 85-2751.**

United States Court of Appeals, Fifth Circuit.

Dec. 29, 1986.

Heriberto Medrano, Harlingen, Tex., for Bazan, Jr.

Reynaldo S. Cantu, Jr. (court-appointed), Brownsville, Tex., for Aleman.

Jose Roberto Flores (court-appointed), McAllen, Joseph A. Connors, III, McAllen, for Flores.

James R. Gough, Asst. U.S. Atty., Henry K. Oncken, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, REAVLEY and WILLIAMS, Circuit Judges.

REAVLEY, Circuit Judge:

Jesus Bazan, Manuel Aleman, and Graciela Flores were each convicted on four

drug counts: conspiracy to possess with intent to distribute over one kilogram of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A); possession with intent to distribute over one kilogram of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A); conspiracy to possess with intent to distribute over fifty kilograms of marijuana in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B); and possession with intent to distribute over fifty kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B). Appellants raise both independent and overlapping grounds for reversal, four of which we address here: that evidence used against appellants was obtained by means of an illegal search; that prosecutorial misconduct at trial warrants reversal; that the convictions of Graciela Flores on two conspiracy counts and on two substantive counts violate the double jeopardy clause of the Fifth Amendment; and that the initial arrest of Flores was illegal because not supported by probable cause. We find merit in only the third contention that challenges Flores' conviction of two conspiracies; we remand for resentencing of Flores based on only one conspiracy. Otherwise the convictions are affirmed.

**Facts**

Bazan was the owner of a 547 acre ranch in a remote area of Starr County, Texas close to the Mexican border. On June 6, 1985, at 2:30 A.M., Arturo Garza, a neighbor of Bazan's, was awakened by the entry of a tanker truck to the Bazan ranch. Garza dressed quickly and followed the truck on foot, entering Bazan's property by crawling under a barbed wire fence. At trial, Garza testified that, standing thirty yards from the ranch house, he saw Bazan, Aleman, and Flores loading boxes onto the tanker, and that two hours later he followed the tanker as it left the ranch. He then telephoned Drug Enforcement Agent Mathews, describing the vehicle and saying it was "loaded." At 6:30 A.M. the vehicle was intercepted by border patrol agents, and its driver, appellant Manual Aleman, was arrested. Agent Mathews then telephoned other agents to secure the ranch

and arrest Bazan. After a futile attempt to escape in a pickup truck by cutting part of the wire fence surrounding the ranch, Bazan and Flores were arrested. The tanker truck was taken to DEA headquarters, where a search of its contents revealed 125 pounds of marijuana and 693 pounds of cocaine, samples of which were admitted into evidence at trial.

The jury found appellants guilty on all four counts as charged, and the district court entered judgment on the verdict.

**Discussion**

**I. An Illegal Search?**

Appellants filed a pretrial motion to suppress "the evidence and testimony" of Garza, on the ground that his entry to the ranch constituted an illegal search under the Fourth Amendment. The district judge denied the motion, citing two reasons in his memorandum opinion: first, that Garza was not a government agent, and, second, that this case is covered by the open fields exception to the Fourth Amendment prohibition on warrantless searches, as enunciated in *Oliver v. United States*, 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984). Since we hold that Garza was not a government agent, we need not here reach the open fields question.

██ A wrongful search or seizure conducted by a private party does not violate the Fourth Amendment, and "such private wrongdoing does not deprive the government of the right to use evidence." *Walter v. United States*, 447 U.S. 649, 656, 100 S.Ct. 2395, 2401, 65 L.Ed.2d 410 (1980). The question is whether, when Garza entered the Bazan ranch, he "must be regarded as having acted as an 'instrument' or agent of the state." *Coolidge v. New Hampshire*, 403 U.S. 443, 487, 91 S.Ct. 2022, 2049, 29 L.Ed.2d 564 (1971).

██ Appellants' argument that Garza must be regarded as an agent of the government is based on an analysis propounded by the Ninth Circuit. In *United States v. Miller*, 688 F.2d 652, 657 (9th Cir.1982), the court held that "two critical

factors in the 'instrument or agent' analysis are: (1) whether the government knew of and acquiesced in the intrusive conduct, and (2) whether the party performing the search intended to assist law enforcement efforts or to further his own ends." For purposes of reviewing this argument we will assume the adequacy of this formulation. Appellants take it as evident that Garza's intent was "purely to aid law enforcement officers." They claim that the only issue is whether the government knew of and acquiesced in the intrusive conduct. In support of their position, appellants contend that Garza had met with DEA Agent Mathews twice before the night of June 6 to discuss the suspicious activity on the Bazan property, that Garza had been a past police informant, that he had served as a deputy sheriff from 1981 to 1983, that he is a close personal friend of Deputy Sheriff Saenz, who knew of Garza's past trespasses on the ranch, and that DEA Agent Mathews "asked Garza to conduct surveillance on the ranch." We disagree with appellants both in their contention that the government knew of and acquiesced in Garza's conduct, and in their contention that it is obvious that Garza acted solely to aid the government. These issues are considered in turn.

We already have held that a person's former employment as a police officer or former status as a police informant does not convert private action into state action for purposes of the Fourth Amendment. *United States v. Bomengo*, 580 F.2d 173, 175 (5th Cir.1978). Obviously, close personal friendship with a deputy sheriff does not render one a government agent. The only portion of appellants' contentions here that has *prima facie* merit is that Agent Mathews met with Garza prior to June 6 and instructed him to "conduct surveillance on the ranch."

Our study of the record, however, convinces us that this "instruction" to Garza was far too vague and general to constitute governmental knowledge of the search that is here challenged. Testimony at trial indicated that in May of 1985 Garza approached Agent Mathews to "tell him we

needed to put a stop to certain individuals around my area," and that Mathews had responded "why don't you give me a call sometime." At the second meeting, in early June, Mathews asked Garza if he had seen any vehicles go into Bazan's ranch; Garza answered in the affirmative and stated that "they might be moving drugs." Mathews told Garza to call "if he saw something strange." Garza emphatically denied that Mathews told him about any police plans regarding the ranch. During cross-examination, he was asked repeatedly by all three attorneys whether he spoke to Agent Mathews or Deputy Saenz, or any other officer, before trespassing on June 6, and each time he denied that he had. The testimony of Saenz and Mathews corroborates that neither knew that Garza was going to enter the ranch on June 6 until after it happened. Mathews testified that he told Garza to call him if he saw trucks entering the ranch "[a]nd then to get out of the area and I would be there." Mathews had no reason to predict that Garza would enter the ranch, and he clearly did not request that Garza do so. And, as Garza testified, when he heard the truck cross the cattleguard he did not pause to tell anyone before rushing to follow it onto the ranch. We conclude that it cannot be said that the government "knew of" or "acquiesced in" the intrusive conduct.

As stated above, the Ninth Circuit's *Miller* opinion includes two factors in the "instrument or agent" analysis: (1) the government's knowledge of the intrusive conduct, and (2) "whether the party performing the search intended to assist law enforcement efforts or to further his own ends." 688 F.2d at 657. In *Miller* itself, the party performing the intrusive search was the victim of a theft; with police knowledge, he entered the defendant's property to photograph his stolen trailer. The photographs were admitted into evidence at defendant Miller's trial. Although informant Szombathy had told officers he intended to enter Miller's property to search for his trailer, the court held this was a private search. The court reasoned

that Szombathy acted to further his own ends. It notes that there was "nothing in the record to suggest that the officers encouraged Szombathy to act on their behalf, or even planted the idea of conducting a private search." *Id.*

Our review of the record in the instant case convinces us that there was considerably *less* police involvement in Garza's search than there had been in the *Miller* search, which the court found to be private. The record makes clear that Garza was a neighbor of Bazan's who was quite concerned about the illegal activity nearby and that it was he who initiated contact with DEA Agent Mathews because of this concern. In *Miller*, the police knew in detail what the informant proposed to do and when he would do it; here Mathews had no knowledge of what Garza would do or when he would act. Furthermore, like the informant in *Miller*, Garza indeed may have had a personal motive to conduct the search—the Bazan ranch had once belonged to Mrs. Garza's family and the defense itself advanced the theory at trial that Garza's real motive for testifying against Bazan was his hope of regaining the property. In any event, we are not obliged to settle the question what was Garza's "true" reason for entering the ranch, for an informant's personal motive to conduct a search is not at all inconsistent with an intention to aid a police investigation. Where, as here, the government has not offered the informant any form of compensation for his efforts, personal motives in fact are likely to be mixed with the desire to help the authorities. The same can be said of the informant in the *Miller* case. Although the court there suggests that Szombathy's motive was purely "personal," self-help repossession of his trailer was clearly not his goal. Rather, he desired to cooperate with the authorities to regain the trailer, and his motives for conducting the search were mixed.

■ In sum, we hold that where the government has offered no form of compensation to an informant, did not initiate the idea that he would conduct a search, and lacked specific knowledge that the informant intended a search, the informant does not act as a government agent when he enters another's property.

■ Since we hold that Garza's search was private, not public, we do not reach the question whether it falls under the open fields doctrine of *Oliver v. United States*, 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984). But we do point out, since counsel overlooks it, that under the doctrine of *Oliver* the fact that an entry is a trespass by either statute or common law is in no way synonymous with its being an illegal search under the Fourth Amendment. The Court in *Oliver* makes clear that crossing a high, intact, fence and/or "no trespassing" sign does not make the entry a Fourth Amendment violation, regardless of whether it is a trespass.

## II. Prosecutorial Misconduct

Appellant Bazan alleges that the prosecutor's behavior at his trial was so prejudicial that it warrants reversal of his convictions. We disagree.

■ Bazan first argues that his conviction should be reversed because of death threat evidence introduced by the prosecution. At trial the prosecutor asked witness Garza whether he felt in any way pressured or threatened, and the judge sustained defense counsel's immediate objection to the question before the witness answered. The court then instructed the jury to completely and totally disregard the question. Bazan says in his brief that Garza shook his head affirmatively, but nothing was done at that time to make this a matter of record or to request the trial court to deal with it. In his closing argument the prosecutor stated: "It cost somebody a pretty penny. That seizure cost someone a lot of money. And that's why [Garza's] identity was not made known until recently, until the time to come to court." Bazan maintains that the prosecutor's question and closing statement were designed to prejudice the jury against him

and that the court's instruction to disregard cannot cure the taint.

In support of his position, Bazan cites *United States v. Qamar*, 671 F.2d 732 (2d Cir.1982), and *United States v. Gonzalez*, 703 F.2d 1222 (11th Cir.1983). Neither of these cases is relevant here, however. Both turn down a defense challenge to a trial court decision to admit death threat evidence, upholding trial court discretion to decide that such evidence is indeed admissible. In the case at bar, by contrast, there is no challenge made to the judge's pretrial ruling against the admission of death threat evidence. Rather, the alleged "error" is the court's refusal to grant a mistrial on the ground that the prosecutor attempted to inject evidence which the court had previously ruled unsubstantiated.

Federal Rule of Criminal Procedure 52(a) states that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." We hold that the judge here made no error in refusing to grant a mistrial. The prosecutor's failure to follow the court's pretrial ruling clearly was a defect, but we conclude beyond a reasonable doubt that it did not affect substantial rights. There is no reason to believe that the jury failed to follow the judge's curative instruction.

Bazan argues that the defect must have been harmful because it bolstered the credibility of the informant, and "the sole evidence against the Defendant was the Informant's testimony and [the also inadmissible] extraneous offenses." Nothing could be farther from the truth. Eighteen other witnesses testified at trial, including numerous law enforcement officers. Samples of the cocaine and marijuana found on the truck were introduced into evidence, as were other items of circumstantial evidence.

Bazan next argues that his conviction should be reversed because the prosecutor introduced evidence of extraneous offenses contrary to the court's pretrial instructions. In response to a pretrial motion, the judge ruled that the government could introduce evidence of an October 1982 conviction for possession of cocaine and a December 1984 charge for possession of cocaine and marijuana. Bazan here complains that in eliciting evidence of the 1982 conviction, the testifying agent had to rely in part on hearsay, and the court sustained defense counsel's objection. The prosecutor then stated: "[a]pparently they have sent us the wrong agent." Bazan maintains that this was improper prosecutorial endorsement of inadmissible hearsay evidence. He also complains because testimony revealed that the 1982 conviction actually was for marijuana, not cocaine, and because a prosecutorial question intimated other drug charges.

In *United States v. Lichenstein*, 610 F.2d 1272, 1281–82 (5th Cir.1980), we held that "prejudicial comment, such as the references here to possible extrinsic effects or violations, may be rendered harmless by curative instructions to the jury." Such instructions were also given to the jury in the instant case, and the prosecutorial comments here were not as prejudicial as those in *Lichenstein*.

Bazan's next argument for reversal is that midtrial the government dismissed two codefendants in the case in the presence of the jury. He cites no cases for the proposition that this affected his substantial rights. In *United States v. Martinez*, 604 F.2d 361 (5th Cir.1979), we affirmed a defendant's conviction even though his brother was arrested during his trial, in the presence of the jury, and by two officers who were important witnesses at defendant's trial.

Although Bazan's three charges of prosecutorial misconduct here have been addressed separately, even viewing them cumulatively, we find no error in denying Bazan's motions for a mistrial. In the context of a seven-day trial which produced a transcript of over 1900 pages, we find that the defects here complained of were harmless beyond a reasonable doubt.

## III. Double Jeopardy

Graciela Flores was convicted for conspiracy to possess with intent to distrib-

ute over one kilogram of cocaine, and for conspiracy to possess with intent to distribute over fifty kilograms of marijuana. She argues that her conviction and sentence on two separate conspiracy counts based on a single agreement violates the double jeopardy clause of the Fifth Amendment. We agree.

In *United States v. Winship*, 724 F.2d 1116 (5th Cir.1984), the defendant's two conspiracy convictions both came under the same statute, 21 U.S.C. § 846. One count pertained to marijuana and the other, for an overlapping but not identical time period, pertained to methamphetamine. As we there noted, "[f]or each conspiracy conviction the government seeks, it must prove a corresponding, separate agreement." *Winship*, 724 F.2d at 1126. We then set forth

> five focal points for determining whether evidence in a conspiracy trial proves more than one offense: (1) the time-frames of the charged conspiracies; (2) the persons acting as conspirators; (3) the statutory offenses charged in the indictment; (4) the overt acts charged by the government or any other description of the offense charged which indicates the nature and scope of the activity which the government sought to punish in each case; and (5) the places where the events alleged as part of the conspiracy took place.

*Id.*

The facts in the instant cases meet the five *Winship* factors for the singularity of an offense at least as well as the facts of *Winship* itself. In *Winship*, "[t]he marijuana conspiracy occurred wholly within the period of the methamphetamine conspiracy." *Id.* In the instant case the marijuana and cocaine conspiracies occurred within *exactly* the same time, namely, "on or about June 6, 1985." In *Winship*, "a core cast of characters was the same in both conspiracies." *Id.* at 1127. In the instant case, *exactly* the same characters were in both conspiracies. In *Winship*, as here, "both indictments charged violations of Section 846." *Id.* Because "no overt

act need be alleged in a Section 846 indictment," the fourth factor "is not telling either way" in either *Winship* or the instant case. *Id.* "In terms of the location element, though, significant parallels exist between the two conspiracies," *id.*, whereas in the instant case the location is identical.

We conclude that the double jeopardy clause of the Fifth Amendment bars conviction of Flores for two conspiracies, since under the *Winship* test only one conspiracy was proved.

Flores next argues that only one substantive controlled substance offense occurred, and hence that the double jeopardy clause also was violated when she was convicted of both aiding and abetting and possession with intent to distribute over one kilogram of cocaine, and of aiding and abetting and possession with intent to distribute over fifty kilograms of marijuana. Flores cites *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), but, in fact, this case does not support her position. The Court there states that "[t]he applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *Id.* at 304, 52 S.Ct. at 182. Here, count 2 charges a violation of § 841(b)(1)(A) ("a controlled substance ... which is a narcotic"), while count 4 charges a violation of § 841(b)(1)(B) ("a controlled substance ... which is not a narcotic"). Different penalties attach to each. Further, the government obviously must prove an additional fact for the marijuana conviction as opposed to the cocaine conviction. Flores' second double jeopardy argument is without merit.

## IV. An Illegal Arrest?

After receiving Garza's call on the morning of June 6, authorities entered the Ba-

zan ranch and arrested both Bazan and Flores. Two pistols, a small amount of marijuana, and lidocaine (a substance used to "cut" cocaine) were seized from Flores' purse and cloth make-up bag. She argues here that these items should have been suppressed because they were obtained pursuant to an illegal arrest. We disagree.

Flores maintains that she is "in the same position as the appellant in *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979)." In that case, Ybarra was a patron of the Aurora Tap Tavern, and the police had a warrant to search the tavern as well as its bartender. The Court held that this warrant was an insufficient basis on which to search Ybarra, who was merely present in the tavern. The Court explained that "[t]here is no reason to suppose that, when the search warrant was issued ... the authorities had probable cause to believe that any person found on the premises of the Aurora Tap Tavern, aside from [the bartender], would be violating the law." *Id.* at 90, 100 S.Ct. at 341–42. In the instant case, by contrast, there was good reason to suppose that any person found on the Bazan ranch immediately after Garza's telephone call to Mathews would be violating the law. Unlike the Aurora Tap Tavern, the Bazan ranch is not open to members of the general public; it is both private and fenced. Moreover, Flores was a passenger in the pickup truck Bazan was driving when he cut his fence in an effort to escape. The arrest of Flores was based on probable cause and there was no reason to suppress the items found in her purse.

The other points of error raised by appellants are meritless. Flores' conviction for two conspiracies is reversed, and the case is remanded with instructions to enter judgment of conviction for only one conspiracy and for resentencing of Flores accordingly. In all other respects the judgment of the district court is affirmed.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.